Burke et ux., Appellants, *v.* Kerr.

Argued April 24, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Charles E. Harrington,* with him *Robert E. Ashe,* for appellants.

*H. A. Heilman,* for appellee.

OPINION BY PARKER, J., October 4, 1940:

This is an interpleader framed by the court below to determine to whom royalties due from the operator of a limestone quarry should be paid.

On August 8, 1912, I. E. Anthony and wife, the own-

ers of fifty acres of land in Armstrong County, "granted, bargained, sold, let and leased" to Pittsburgh Limestone Company, Limited, all the limestone in and under the land, with right of ingress to mine and remove that mineral, the right to "lay all necessary railways and tracks upon the said lands for the mining and transporting of the same," to erect necessary buildings, crushers, machinery and appliances, to maintain tracks through said lands to transport "minerals from other lands in the said vicinity," to transport such mineral to any crusher or other appliance which grantee might use to prepare the mineral for market. In consideration the company agreed to pay a royalty of one cent per long ton for the stone mined with a minimum of $22.50 per quarter. The grantee reserved the right to cancel and make void the contract at any time by a surrender of its rights and in that event to be relieved of responsibility for future royalties, with certain reservations not important here. Grantors also reserved the right to cancel and make void the contract for failure to pay monies or royalties due from grantee.

The title of the grantee became vested in Pittsburgh Limestone Corporation and the title of the grantors, subject to the contract to Pittsburgh Limestone Company, Limited, including, by separate conveyance, the right to receive the royalties thereon, became vested in W. J. Burke and wife, the plaintiffs in this interpleader.

On October 23, 1935, James Croyle had a judgment against the plaintiffs which it is admitted was a lien on the real estate of plaintiffs. On that date a fieri facias was issued on the judgment and the fifty acres was levied upon. "There was no special writ or levy in said Sheriff sale, other than ordinary straight fieri facias." On November 30, 1935, the sheriff sold the fifty acres to defendant, Mary Kerr, and gave her a deed for the land.

Later Mary Kerr sued the Pittsburgh Limestone Cor-

poration for royalties then due. The corporation admitted that it owed someone the royalties claimed but replied that Burke and wife also claimed the same royalties. On petition of the corporation the monies were paid into court and an interpleader was framed by agreement of all parties. The issue was tried by a judge without a jury and judgment was entered in favor of defendant. The plaintiffs have appealed. We are all of the opinion that the issue was correctly decided by the court below and that the conclusions reached are sustained by the clear and convincing opinion by Judge RIMER.

There are no disputed facts involved in this appeal for the parties stipulated that the findings of fact made by the trial judge and the writings referred to in the opinion or separately printed should be taken as true. From an examination of such facts and writings it is apparent that the principles of law applicable to the mining for coal should be applied here in construing the contract for the mining of limestone. It is the contention of the appellants that the contract concerning the limestone under the tract of fifty acres amounted to a sale of all the limestone in place and that the grantee or vendee took an absolute estate in that mineral, that the royalties to be received by the vendors represented a deferred part of the consideration, and that the right to receive such monies was personal property and did not pass under the sheriff's deed. They relied upon the principles announced in *Prager's Estate*, 74 Pa. Superior Ct. 592; *Hosack v. Crill*, 18 Pa. Superior Ct. 90; and *Hosack v. Crill*, 204 Pa. 97, 53 A. 640.

Not only do the cases of *Coolbaugh v. Lehigh & W. B. Coal Co.*, 213 Pa. 28, 62 A. 94, and *Gallagher v. Hicks*, 216 Pa. 243, 65 A. 623, rule the present case, but the opinions in those cases answer all of the appellants' arguments.

In the Coolbaugh case the owners of coal land entered

into an agreement granting, demising and leasing all the coal in said lands. The lessee or vendee covenanted to pay an annual rental of $20,000 in quarterly installments of $5,000, in consideration of which vendee was permitted to remove 80,000 tons of coal annually. The lease was to "determine and end when all the mineable (and) anthracite coal shall have been mined and removed from the demised premises, unless the term be sooner ended under provisions thereinafter contained." On failure to pay the rental for sixty days the vendors at their option could declare the lease at an end. The vendors' interest "in and to all the coal" in and under the land was sold on a judgment against them.

The court held first that though the contract was called a lease, it was a sale of coal in place, citing many authorities in support thereof; second, that the vendor retained an "interest in the coal as land"; and finally, that by the sheriff's sale the vendors' interest in the coal passed to the purchasers which interest included "the right of the execution defendant ...... to receive 'rentals' or royalties under the coal lease". The court in affirming the order of the court below used this language: "When, as here, the question is as to the right of the grantor or lessor to subject the interest in the land which remains in him to the lien of a judgment or mortgage, no other doctrine than the one announced by the court below can accord with reason or the authorities relating to the interest retained by a vendor under an agreement for the sale of his land."

The facts in *Gallagher v. Hicks,* supra, are substantially the same as the present case. The only difference is in the operative words employed in the original contracts. This was not of importance for as was pointed out in the Coolbaugh case "though the agreement ...... is called by the parties to it a demise or lease, we have, from *Hope's Appeal,* 29 W. N. C. 365, down through a

long line of cases, called it a sale of coal in place as land."

These decisions followed a long line of cases dealing with the respective interests of vendor and vendee in an ordinary agreement for the sale of land where the same principles were announced. In *Chahoon v. Hollenback*, 16 S. & R. 425, Chief Justice GIBSON said: "Thus, two purchasers, the one under a judgment against a vendor, after articles for a purchase, the other under a judgment against the vendee, will stand in the relation of vendor and vendee, with all the rights and remedies which those whom they represent could have claimed or exercised against each other. The reason is, that a judgment against a vendor binds, not only the legal estate, but the beneficial interest that remains in him (which, of course, is an interest in the land to the amount of the unpaid purchase-money); and a judgment against the vendee, binds only the interest for which he has paid." To the same effect is *McCleery v. Stoup*, 32 Pa. Superior Ct. 42, 46.

In *Leiper's Executors v. Irvine*, 26 Pa. 54, 57, Chief Justice LEWIS used this language pertinent to the present inquiry: "The original contract of sale did not work an absolute conversion of the real estate into personalty against the will of the creditors. They might, notwithstanding such contract, obtain judgments against it, and sell it as real estate; and the proceeds would be distributed among the lien creditors, ...... Mr. Leiper could also have mortgaged it, or conveyed it as real estate, and these acts would have been perfectly valid to pass whatever remaining interest he possessed, without any such delivery or change of possession as is required to pass a title to personal property."

By a similar line of reasoning in *Baird's Appeal*, 132 Pa. Superior Ct. 573, 1 A. 2d 485, we arrived at the conclusion that the grantor in a contract conveying the oil and gas and providing for the development and pro-

duction of oil and gas retained an interest in the land subject to an assessment as real estate. *Prager's Estate,* supra, and *Hosack v. Crill,* 18 Pa. Superior Ct. 90, involved questions of succession on the death of a grantor who had contracted for the sale of coal or oil and gas. There is here no question of succession involved and those cases are not pertinent.

Judgment affirmed.